IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ATSER RESEARCH TECHNOLOGIES, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RABA-KISTNER INFRASTRUCTURE, )<br>INC., ET AL., )<br>)<br>Defendants. )<br>) | Civil Action No. 5:07-cv-00093-HLH |

**DEFENDANTS' CLAIM FOR ATTORNEYS' FEES**

I. **INTRODUCTION**

Defendants, Raba-Kistner Infrastructure, Inc. et al ("Defendants"), submit this claim for attorneys' fees in accordance with the Court's Order finding the case to be exceptional under 35 U.S.C. § 285 and awarding Defendants attorneys' fees.[1] The Court based its finding that the case is exceptional on two separate instances of litigation misconduct: (1) Atser Research Technologies, Inc.'s ("Atser Research") "utter disregard for the Court's order to produce I-15 documents constitutes litigation misconduct,"[2] and (2) Atser Research's failure to disclose its licenses.[3] In accordance with controlling law, the Court held that the "award must bear some relation to the extent of the misconduct."[4]

As discussed more fully herein, Atser Research's litigation tactic of hiding the critical I-15 documents permeated and unnecessarily lengthened this litigation. Those documents formed a basis for this Court's dismissal of the case on summary judgment. As outlined below, those documents and related information should have been produced no later than June 2007, as requested by Defendants' interrogatories and document requests. Had they been produced at that time, Defendants could have and would have moved immediately for summary judgment, and avoided all of the costs that ensued.

Yet, as this Court knows, Atser Research, despite being ordered to do so, never produced its own contract documents for the I-15 project. This intentional misconduct unnecessarily complicated and prolonged the litigation, leading to substantial additional attorneys' fees. As detailed below, those fees total $1,152,654.00.

---

[1] See Docket No. 254, as modified by Docket No. 261, which removed one of the multiple bases for finding the case exceptional.

[2] See Id. at 3.

[3] See Id. at 6.

[4] See Id. at pp.8-9.

1

## II. CATEGORIES OF WORK SUBJECT TO THE AWARD OF ATTORNEYS' FEES

### A. The Pervasive Impact Of Failing to Produce the I-15 Documents

The critical nature of the I-15 documents is not debatable, nor are the repeated and intentional efforts Atser Research employed in refusing to produce those documents to Defendants. In fact, the I-15 documents that formed a basis for finding the patent invalid were <u>never</u> produced to the Defendants by Atser Research. As this Court knows, it was only Defendants' perseverance in connection with third-party discovery that they were able to locate the documents in the archives of the State of Utah Department of Transportation. But for that perseverance, Defendants would not have been able to overcome Atser Research's "utter disregard for the court's order to product I-15 documents."[5]

Atser Research's refusal to produce the I-15 documents spans years of this litigation. Defendants' long, drawn-out and unsuccessful quest to obtain the I-15 documents from Atser Research began with its Document Request No 15, sent in April 2007, which sought "[a]ll documents that evidence the first public use, the sale of, the offer for sale of, and/or importation of any product incorporating or using any alleged invention claimed in the Patent-in-suit;"[6] and its Interrogatory No. 4, sent on the same day, which sought the date of conception for any alleged invention in the asserted patent.[7]

Following Atser Research's initial responses to these discovery requests, Defendants tried unsuccessfully for the better part of a year to obtain the requested discovery from Atser Research. The following is a timeline of Defendants' efforts:

1. In a May 16, 2007 letter,[8] Defendants outlined Atser Research's deficiencies in its

---

[5] *See Id.* at 3.

[6] *See* Exhibit 1, Declaration of John P. Moran, Attachment 1.

[7] *See* Exhibit 1, Declaration of John P. Moran, Attachment 2.

[8] *See* Exhibit 1, Declaration of John P. Moran, Attachment 3.

2

document production and interrogatory responses. As shown by Defendants' summary of the meet and confer, Atser Research agreed to supplement its production and response to Interrogatory No. 4 by June 1, 2007.[9]

2.      On August 15, 2007, having still received nothing, Defendants wrote to Atser Research seeking to resolve the issue. Defendants explained that the discovery sought related directly to Defendants' invalidity defense. Specifically, Defendants explained that their efforts to seek early versions of the Assure-IT program that supposedly embodied the patented technology was "quite relevant to our invalidity defense. For example, programs that predate the patent and provide the functionality of the Assure-It program would invalidate the asserted patent."[10] While Defendants' correspondence mentioned the "Assure-IT" program, they did not then realize that that term was used interchangeably with the name "Lab-IT," which was the program used on the I-15 project. Atser Research, however, knew of the interchangeable use at the time, but did not tell Defendants.[11] This failure to disclose the identity of earlier programs that were functionally similar to the Assure-IT program obscured discovery into the I-15 project because Atser Research failed to disclose such earlier programs.

3.      On October 31, 2007, with the documents and information still not produced, Defendants wrote to Atser Research seeking a further response to Interrogatory No. 4, which concerned the circumstances surrounding the date of conception. Atser Research had supplemented its response and stated a date of conception that was about a year earlier that the date Atser Research had previously stated. They did not include in the supplemental response a description of the circumstances of conception. Clearly some facts concerning the conception date became know Atser Research that cause it to move the date by a year. Atser Research, however, did not provide those facts or an explanation of the circumstances surrounding the new conception date, which circumstances surrounding the date of conception were sought by the interrogatory.[12]

4.      The next day, on November 1, 2007, Defendants again wrote to Atser Research seeking documents responsive to Document Request No. 15, e.g., documents relevant to the sale, the offer for sale, and/or importation of any product incorporating or using any alleged invention claimed in the patent-in-suit.[13]

5.      On November 2, 2007, Defendants served additional, narrowly tailored document requests that were specifically directed to the I-15 project and Atser Research's software used on that project.[14]

6.      On November 14, 2007, Atser Research took the positions that Defendants' "assumed a much broader scope than is justified" for their earlier document requests.[15]

---

[9] *See* Exhibit 1, Declaration of John P. Moran, Attachment 4.

[10] *See* Exhibit 1, Declaration of John P. Moran, Attachment 5.

[11] *See* Exhibit 1, Declaration of John P. Moran, Attachment 6, p. 115:12-19.

[12] *See* Exhibit 1, Declaration of John P. Moran, Attachment 7.

[13] *See* Exhibit 1, Declaration of John P. Moran, Attachment 8.

[14] *See* Exhibit 1, Declaration of John P. Moran, Attachment 9.

[15] *See* Exhibit 1, Declaration of John P. Moran, Attachment 10.

7.     On December 21, 2007, still concealing that the names "Assure-IT" and the earlier program name used on the I-15 project, "Lab-IT," were used interchangeably, Atser Research wrote concerning its response to Interrogatory No. 4, stating "[a]lthough earlier, different versions of Assure-It not covered by the '498 patent may have been used on the I-15 project, these are not relevant to this case."[16] Those responses failed to mention that one of the Atser entities had offered for sale an early version of Lab-IT. That offer formed a basis for invalidating the patent, which is presumably why Atser Research steadfastly refused discovery into its I-15 documents and refused to explain the circumstances surrounding the alleged early conception date asserted in response to Defendants' Interrogatory No. 4.

8.     On January 7, 2008, Defendants again wrote to Atser Research explaining the relevancy of the I-15 documents, software and the I-15 project.

9.     On January 25, 2008, Defendants again wrote to Atser Research detailing the deficiencies in the document production for the I-15 project and the response to Interrogatory No. 4.[17]

10.    On January 28, 2008, Defendants yet again wrote to Atser Research complaining about the lack of I-15 documents for the critical time predating the filing of the patent, and summarizing Atser Research's discovery gamesmanship, stating:

> Atser has no legitimate basis for refusing to produce these highly relevant documents, or all documents relating to prior art and license agreements. Instead, in response to my November 1, 2007 letter, you stated that we had "assumed a much broader scope [of Raba-Kistner's First Set of Document Requests] than is justified." However, when we served a narrower Second Set of Document Requests, which asked for the specific documents outlined in my November 1, 2007 letter, you stated that "Plaintiff has produced materials that reference [each document request]." Defendants are entitled to more than some documents that may "reference" the categories of documents set forth in our First Set of Document Requests and described in my November 1, 2007 letter.[18]

11.    After more that eight months of trying to obtain the I-15 documents, on April 18, 2008, Defendants filed a motion to compel Atser Research to production of among other things, the I-15 documents.[19]

Atser Research's continued refusal to provide the I-15 documents after being ordered to do so is chronicled in Defendants' Motion to find the case exceptional.[20] For the convenience of the

---

[16] *See* Exhibit 1, Declaration of John P. Moran, Attachment 11.

[17] *See* Exhibit 1, Declaration of John P. Moran, separately filed under seal, Attachment 13.

[18] *See* Exhibit 1, Declaration of John P. Moran, Attachment 14.

[19] *See* Docket No. 147.

[20] *See e.g.,* Docket No. 245 pp. 2-5 and cited exhibits.

4

Court, Defendants repeat that timeline here:

1.   On April 18, 2008, Defendants filed a motion to compel Atser Research to produce, among other things, documents regarding the I-15 project including "all documents related to [Atser Research's] bidding for and award of contracts for work on the I-15 project."[21] As described in that motion, "Defendants [had] been seeking these documents for over eight (8) months."[22]

2.   On April 28, 2008, in response to the motion, Atser Research represented that it had "produced all relevant, non-privileged documents in its possession or control."[23]

3.   On April 29, 2008, the Court nonetheless ordered Atser Research to produce documents regarding its work on the I-15 project, including the contract documents: "within fourteen days of the date of this Order Atser must produce documents ... regarding Atser's work on the I-15 project ... including ... those that relate to Atser bidding for and the award of contracts for work on the I-15 project."[24]

4.   On May 19, 2008, despite the Court's Order, Atser Research produced just <u>175</u> additional pages of documents, <u>none</u> of which concerned the I-15 project, as described in Defendants' discovery letter.[25] Atser Research responded to Defendants' discovery letter by again asserting that it had produced all documents in its possession and control.[26]

5.   The week of April 13, 2009, several of Defendants' employees, as well as their counsel, travelled to Salt Lake City, Utah to search for documents regarding the I-15 project. Through this search, Defendants discovered a contract demonstrating the sale of the invention to the State of Utah in 1998, approximately three years before the filing date of the patent-in-suit.[27] These documents are the very documents upon which the Court relied in invalidating the patent-in-suit.

6.   On June 22, 2009, after learning that Atser Research had I-15 related documents on its computer systems and which had not been produced, Defendants filed a second motion to compel, this time requesting that the Court permit an inspection of Atser Research's internal computer systems.[28]

7.   On July 6, 2009, Atser Research responded by again asserting that it had produced all

---

[21]   See Docket No. 147 at 7.

[22]   See id. at 1.

[23]   See Docket No. 149 at 3.

[24]   See Docket No. 151 at 10.

[25]   See Docket No. 245, Exhibit 2.

[26]   See Docket No. 245, Exhibit 3 ("ATSER has complied with the Court's Order of April 29, 2008.").

[27]   See Docket No. 187 at 3.

[28]   See Docket No. 187.

5

relevant documents in its possession or control.[29] The Court relied on this representation in denying Defendants' motion.[30]

8.  On July 14, 2009, during the final days of discovery, Defendants deposed Robert Bledsoe, the President and a long-time employee of Atser, L.P., who was the principal in charge of the I-15 project for Atser LLC. Despite Atser Research's repeated representations to the contrary, Mr. Bledsoe testified that:

- Atser Research did in fact retain documents regarding the I-15 project, and that they were placed in an offsite storage facility: "we dismantled the laboratory and brought the lab back to Houston. We brought the files back to Houston. They were boxed up, sent to the offsite storage."[31]

- Atser L.P. "tends to air [sic] on the other side of keeping a lot of excess documents, in my mind."[32]

- Nobody had searched the boxes in offsite storage for the purposes of this case.[33]

- He had the I-15 contract documents in his personal files. Specifically, Mr. Bledsoe stated that he was <u>sure</u> his personal files contained the I-15 contract that was the subject of Defendants' motion to compel and that was never produced by Atser Research in this case: "Well, I'm sure a copy of the contract is in there."[34]

- He did not search his I-15 file for the purpose of this case.[35]

- Even after Mr. Bledsoe's deposition, Atser Research never produced the I-15 documents in its possession and control.

By concealing the critical I-15 prior art documents, Atser Research caused Defendants to engage in expensive and unnecessary third-party and expert discovery, and unnecessarily prolonged this litigation through expert reports, expert depositions, and unnecessary non-prior art

---

[29] See Docket No. 194 at 3.

[30] See Docket No. 196 at 16 ("On the present record, Atser's verified answer to an interrogatory in which it represents it has disclosed all responsive documents must be given some weight. . . .").

[31] See Docket No. 245, Exhibit 1 at 85:5-8.

[32] See id. at 93-94.

[33] See id. at 94:12-17.

[34] See id. at 82-83.

[35] See id. at 82.

summary judgment motions,[36] to the eve of trial. Had Defendants received the I-15 documents when they were first sought, Defendants would not have needed to contest Atser Research's broad claim interpretation and would have moved early for summary judgment. It would have in fact done so over a year earlier than occurred in this case, saving hundreds of hours of attorney time and thousands of dollars in attorneys' fees.

Without the invalidating I-15 prior art available to them, Defendants were forced to: (1) engaged in a protracted Markman process that ultimately proved to be irrelevant to the Court's analysis in light of the I-15 prior art; (2) explore many other prior art sources, such as the implementation of the prior art software program, SiteManager, in various states; (3) expend attorney and expert witness time developing analysis of that other prior art, and (4) extensive further discovery and expert work. Indeed, because Atser Research never produced the I-15 contract documents, Defendants expended time, effort and financial resources on extensive depositions, including the depositions of Ms. Kirkland,[37] Mr. Bledsoe and Mr. Martinez, that need never have occurred.

Because Atser Research never produced its own contract documents for the I-15 project, which critical documents proved to be fatal to its patent, this Court should award fees accruing for the period from the sanctionable conduct – the time at which Atser Research failed to produce the I-15 documents -- through the award of judgment in this case, which is May 16,

---

[36] *See e.g.,* Docket Nos. 199 (non-patentable subject matter under 35 U.S.C. § 101), 207 (Non-enablement and non-infringement of claim 12), 213 (Lone Star Infrastructure, JV Non-infringement), and 214 (Not Entitled to Damages for Lost Profits).

[37] Ms. Kirkland is a named inventor. But, her involvement with the Assure-It software came well after the critical date, March 21, 2000, as well as after 1999 date of conception alleged by Atser Research in response to Interrogatory No. 4. Thus, by Atser Research's interrogatory responses, Ms. Kirkland cannot be an inventor and her deposition was unnecessary for that reason as well as it was not needed for the purposes of investigating the I-15 work.

7

2007 through judgment in this case, August 27, 2009.[38]

### B. The Impact of Denying the Existence of Licenses

Atser Research "adamantly denied the existence of a license in this suit."[39] The issue of licenses was covered in both the deposition of Mr. Bledsoe and Mr. Martinez. Mr. Martinez testified, despite Atser Research's adamant denials licenses did in fact exist. Moreover, the denial of licenses required Defendants to seek evidence of licenses through third parties, such as Peter Kiewit Sons Inc. in Nebraska. This discovery required supplementation of Defendants' damages expert report, and therefore required additional discovery costs and expert costs.

## III. LEGAL BASIS FOR THE AWARD

In accordance with the Order, Defendants submit this claim under 35 U.S.C. § 285. This Court also has authority to award the fees sought, under Fed. R. Civ. Proc. 26 and 37 for Atser Research's "utter disregard for the Court's order to produce I-15 documents constitutes litigation misconduct."[40] Atser Research's failure to produce the I-15 documents, that were relevant to a critical issue in this case – the validity of the asserted patent, unnecessarily prolonged this litigation to the eve of trial, and caused Defendants to engage in expensive and unnecessary fact and expert discovery, including third party discovery, expert witness preparation and trial preparation.

## IV. DETERMINATION OF THE AMOUNT OF ATTORNEYS' FEES

### A. Legal Basis for Determining the Amount of Attorneys' Fees

In assessing a fee award, the Federal Circuit requires that the Court must make "some

---

[38] See *Clearvalue, Inc. v. Pearl River Polymers, Inc.*, 560 F.3d 1291, 1301 (Fed. Cir. 2009) (upholding an award of attorneys' fees under Rules 26 and 37 covering the block of time that the District Court estimated as the beginning and the end of sanctionable conduct, and reversing an award under 35 U.S.C. § 285 because there was no prevailing party.)

[39] See Docket 254, at 6.

[40] See *Id.* at 3.

8

findings, certainly more than 'an equitable instinct.'"[41] As part of those findings, the Court determined "a lodestar by determining a reasonable number of hours multiplied by a reasonable rate."[42]

### B. The Claimed Hourly Rates Are Reasonable

The hourly rates for Defendants' attorneys are reasonable given the firm's size, reputation, resources, and the experience level of the attorneys that worked on the case. As discussed in the accompanying Declaration of Mr. Robert Rowan, the hourly rates for Defendants' attorneys are reasonable and are in the approximate range for attorneys with similar experience and for attorneys experienced in the area of patent litigation.[43]

The Declaration of Mr. Rowan also substantiates the reasonableness of the hourly rates. In fact, Mr. Rowan testifies that, based on his 20 years of patent litigation experience, the hourly rates of Holland & Knight attorneys are lower than those for similarly experienced attorneys. Finally, the test of the reasonableness of attorneys' fees is the marketplace.[44] Because the hourly rates of Defendants' attorneys are within the approximate range of similarly experienced attorneys, Defendants respectfully submit that those rates are reasonable.

### C. The Number Of Hours Defendants Claim Is Reasonable

#### 1. The Hours Associated with the I-15 Documents and the Licenses

Defendants seek fees directly related to the activity and fees that would not have occurred or been incurred but for Atser Research's misconduct. In *Clearvalue, Inc. v. Pearl River*

---

[41] *See Hockerson-Halberstadt, Inc. v. Propet USA Inc.*, 62 Fed.Appx. 322, 333, 2003 WL 1795641, **8 (Fed. Cir. 2003); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068 (Fed. Cir. 1983).

[42] *See, e.g., O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 2007 WL 2329833, *2 (Fed. Cir. 2007).

[43] *See*, Exhibit 3.

[44] *See, e.g., Armament Sys. and Procedures, Inc. v. IQ Hong Kong Ltd.*, 546 F. Supp. 2d 646, 649-50 (E.D. Wisc. 2008) (explaining that the best evidence of the market value of legal services is what clients pay for them, and that if the bills were paid it strongly implies that the bills were "reasonable.")

9

*Polymers, Inc.*, the Federal Circuit affirmed an award of fees under Fed.R.Civ.Proc. 26 and 37 that covered the period of the sanctionable conduct.[45] Here, the litigation misconduct began at least as early as Defendants' efforts to obtain the I-15 documents from Atser Research – June 1, 2007 -- which is the date that Atser Research agreed to supplement its responses, and continued through the summary judgment entered by the Court.[46] At no time did Atser Research ever correct its conduct.

Had Atser Research provided the invalidating discovery in a timely manner, Defendants could and would have moved quickly for summary judgment since, as the Court has noted, invalidity based upon those documents is clear. Defendants could have avoided the bulk of the fees that followed, other than the filing of the summary judgment papers themselves.[47] Defendants therefore ask that this Court award all fess from the time of the wrongful withholding of the I-15 documents to the time of the Court's judgment, except for the fees associated with the summary judgment motion itself. Referring to Exhibit 4, that totals $1,152,654.00.

Within that amount is the amount specifically directed toward Defendants' third party discovery to secure the I-15 documents and licenses, and its repeated efforts to compel Atser Research to provide those documents. Defendants' efforts to obtain the I-15 documents are chronicled above. The discovery that would have been unnecessary includes: damages expert reports and depositions; non-prior art summary judgments; trial preparation; authentication of the

---

[45] See *Clearvalue, Inc. v. Pearl River Polymers, Inc.*, 560 F.3d at 1301, n. 7. While the Federal Circuit reversed an award under 35 U.S.C. § 285, it did so because there was no prevailing party. It expressly discussed and did not object to the District Court's estimation of the period of the sanctionable conduct. Thus, this Court is free to follow the guidance provided by the Federal Circuit and the Eastern District of Texas in awarding fees covering the period of Atser Research's intentional misconduct of hiding invalidating prior art – the I-15 documents.

[46] See Exhibit 1, Attachment 4.

[47] See Docket No. 200.

I-15 documents.[48]

Had Defendants timely obtained the I-15 documents, it is obvious that those documents would have been fully reviewed and marshaled for an early summary judgment of invalidity, which would have allowed the parties to avoid all of the last minute discovery and depositions, and in particular, that addressing the issue of damages. Invalidity of the patent on the basis of prior art renders the damages issue moot. Consequently the expert reports and depositions of Dr. Mangum and Mr. Bledsoe[49] would have been unnecessary. In addition, timely production of the I-15 documents would have allowed Defendants to avoid the necessity of obtaining a computer forensics expert to validate the dates for the software files produced by Atser Research. Such dating would have been superfluous given timely production and authentication of the I-15 documents.

Given the dates of the I-15 documents, the deposition of Ms. Kirkland, one of the named inventors, would have been unnecessary. Defendants could have taken at an earlier time, the depositions of Mr. Birkner and Mr. ElDahdah (other named inventors) because their name appeared in the relevant I-15 documents. Those earlier deposition would have avoided the deposition of Ms. Kirlkand's whose name does not appear in the relevant time period of the I-15 documents, and showed that she did not join the relevant software project until <u>after</u> the critical March 21, 2000 date. Similarly, but for the need to authenticate some the I-15 documents (because they were not produced from Atser Research's files and Atser Research refused to stipulate to their authenticity), the deposition of Mr. Martinez would have been unnecessary

---

[48] *See* Local Rule CV 26(d) providing that documents produced by a party are deemed authenticated for use against that party.

[49] In addition, because Atser Research did not produce the I-15 documents from its files, and refused to stipulate to their authenticity, Mr. Bledsoe was unnecessarily deposed on to authenticate the I-15 documents. Portions of Mr. Martinez' deposition were similarly directed to authenticating the I-15 documents. *See* Local Rule CV 26(d) providing that documents produced by a party are deemed authenticated for use against that party.

based on earlier disclosure of all of the licenses, and all of the I-15 documents.

Moreover, Defendants ability to timely move for invalidity on the basis of prior art (including the public use – SiteManager motion) would have rendered unnecessary the non-prior art summary judgment motions, including non-patentable subject matter under 35 U.S.C. § 101, the non-infringement and non-enablement of claim 12, non-infringement by Lone Star Infrastructure, JV, and a determination that Atser Research was not entitled to lost profits. These motions would have been rendered moot had Defendants been able to timely move for summary judgment of invalidity based on the I-15 documents that Atser Research hid throughout this entire litigation. As outlined in Exhibit 4, this subset of the fees resulting from Atser Research's misconduct totals $417,066.90.

V. **CONCLUSION**

For the reasons described above, Defendants therefore ask that this Court award all of the fees from the time of the wrongful withholding of the I-15 documents to the time of the Court's judgment, except for the fees associated with the summary judgment motion itself, totaling $1,152,654.00.[50]

DATED: November 30, 2009                    Respectfully Submitted,

/s/ John P. Moran
John P. Moran (D.C. Bar # 375888)
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, DC 20006
(202) 955-3000
(202) 955-5564 (Facsimile)

Benjamin D. Enerson (BBO #660553)
HOLLAND & KNIGHT LLP

---

[50] In accordance with Local Rule CV 7 – 2 (i), if required by further order of the Court, Defendants can submit detailed time sheets for the fees claimed, including the daily time entries for each individual, the date of the work, the individual performing the work, a description of the work performed by the individual on that date, the individual's hourly rate, and a total amount for the individual's time entry.

10 St. James Ave, Suite 1200
Boston, MA 02116
(617) 305-2150
(617) 523-6850 (Facsimile)

Dean V. Fleming
Texas Bar No. 07122100
Fulbright & Jaworski L.L.P.
300 Convent Street, Suite 2200
San Antonio, TX 78205-3792
(210) 224-5575
(210) 270-7205 (Facsimile)

13

## CERTIFICATE OF SERVICE

I hereby certify that on the November 30, 2009, the foregoing document was served upon the following counsel of record for Plaintiff via the Court's electronic filing and service system:

Ernest W. Boyd, Esq.
Eric M. Adams, Esq.
Corey J. Seel, Esq.
Jeremy R. Stone, Esq.
MEHAFFY WEBER, P.C.
One Allen Center
500 Dallas, Suite 1200
Houston, Texas  77002

*Attorneys for Plaintiff Atser Research Technologies, Inc.*

I hereby certify that the foregoing document was also served on counsel of record for Plaintiff by hand.

/s/ John P. Moran
John P. Moran